UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CIVIL ACTION NO. 07-283-JBC

TRACY McQUEEN,                                                                                               PLAINTIFF

V.                      **MEMORANDUM OPINION AND ORDER**

LIFE INSURANCE C0MPANY
 OF NORTH AMERICA,                                                                     DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

On August 6, 2007, plaintiff, formerly employed by Ferguson Enterprises in Richmond, Kentucky, filed this action in Estill Circuit Court (Case No. 07-CI-222) against defendant Life Insurance Company of North America (hereafter "LINA")[1], pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq., ("ERISA"), alleging that the defendant's decision to terminate his long-term disability benefits, previously awarded under Ferguson Enterprises's qualified Plan, violated ERISA.

Plaintiff seeks a determination that he is entitled to disability benefits under the Plan and entry of a judgment against the defendant awarding him disability benefits from May 5, 2005, the date his disability benefits were terminated, to date, post-judgment interest, his costs and attorney's fees.

On September 4, 2007, defendant removed this action from Estill Circuit Court, asserting that plaintiff is seeking benefits arising out of an employee welfare benefit plan established or maintained by his former employer pursuant to the Employee Retirement Income Security Act of

---

[1] Although plaintiff's complaint identified the defendant as CIGNA Group Insurance, in answering the complaint, defendant advised that CIGNA Group Insurance has been incorrectly identified as the insurer in the action, that LINA is the proper party which issued the policy to plaintiff, and that CIGNA Group Insurance is a service mark. Subsequently, plaintiff filed a First Amended Complaint wherein plaintiff correctly identified the defendant as LINA.

1974, 29 U.S.C. § 1001, et seq., ("ERISA"); therefore, plaintiff's claims are regulated by ERISA and fall under its preemptive terms. [DE #1].

This matter is currently before the court on defendant's motion for a protective order concerning the disclosure of certain information. [DE #24]. Specifically, LINA seeks a protective order for documents relating to: (1) the contract between LINA and Regain under which Regain provides employability assessment services; (2) statistical and financial data regarding claims received by LINA and referrals to Regain; and (3) the services Regain provided under its contract with LINA, including information related to specific claims referred to Regain. This motion has been fully briefed and is ripe for review.

By Order of August 18, 2008, the district court referred this matter to the Magistrate Judge for resolution of all discovery disputes. [DE #28].

## II. THE MOTION FOR A PROTECTIVE ORDER

Defendant LINA advises that it is prepared to comply with the court's Order of March 4, 2008, which ordered it to produce limited information with respect to LINA's business relationship with Regain, a third party firm to which LINA refers disability claims for second opinions, and is ready and willing to produce the information encompassed by that Order. However, due to the confidential "claims and business information" that will be disclosed in compliance with the March 4, 2008 Order, LINA has moved for a protective order to prohibit the disclosure of its "claims and business information" to the public or to anyone not affiliated with the parties and this litigation.

In support of its motion for a protective order regarding its "claims and business information" in question, LINA relies in part on *Hamilton v. State Farm Mutual Automobile Insurance Company*,
204 F.R.D. 420 (S.D. Ind. 2001), a case which is very instructive concerning the same issues presently before the court. The issues before the court in *Hamilton* were "whether State Farm's claims handing materials constitute protectable trade secrets, and whether they are subject to a

protective order." *Id.* at 423.[2]  At the end of the day in *Hamilton*, the court concluded that State Farm's claims handling materials were trade secret materials that should be protected by a protective order.

Plaintiff has objected to LINA's motion for a protective order, contending that LINA has not provided the court with any evidence that would entitle it to a protective order.

### Discussion/Analysis

Rule 26(c)(7) of the Federal Rules of Civil Procedure concerns protective orders and trade secrets and states in relevant part, as follows:

> **(c) Protective Orders**.  Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> \* \* \* \*
>
> (7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way; and . . .

Thus, in order to satisfy Fed.R.Civ.P. 26(c)(7), the movant must show that: (1) the interest for which protection is sought is an actual trade secret or other confidential business information that is protected under the rule; and (2) there is good cause for the entry of a protective order. *Andrew Corporation v. Rossi*, 180 F.R.D. 338,340 (N.D.Ill.1998), *citing Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill. 1993).

To determine whether LINA's "claims and business information" in question constitute trade secret information entitled to protection under Fed.R.Civ.P. 26(c)(7), the court is also guided

---

[2]  Since *Hamilton* is a case decided by a sister district court in the Seventh Circuit Court of Appeals, *Hamilton* is not controlling, primary authority.  However, the analysis of the *Hamilton* court and the rationale underlying the court's decision therein is nonetheless applicable by analogy.

by the Kentucky Uniform Trade Secrets Act (hereafter "Act"), codified at KRS 365.880(4), which defines a "trade secret," as follows:

> (4) "Trade secret" means information, including a formula, pattern, compilation, program, data, device, method, technique, or process that:
>     (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and
>     (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

KRS 365.880(4).

Under the foregoing definition, a trade secret entails information that (1) is of independent economic value due to its confidential nature, (2) would be of economic advantage to competitors if disclosed, and (3) is reasonably kept secret. The Act provides that "a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings." KRS § 365.888. Thus, in determining whether LINA's "claims and business information" at issue are trade secret information, the court must examine each of the aforementioned three factors.

**a.      information is of independent value due to its confidential nature**

LINA asserts that the "claims and business information" it seeks to protect from disclosure outside of this litigation is of independent economic value to it in that it invested considerable time, effort, and expense in creating these materials and procedures. Further, LINA states that it has taken measures to ensure that the information plaintiff seeks is not publicly available. In support of these assertions, LINA relies on the affidavit of Annie Hong, its Senior Operations Representative, which states in relevant part, as follows:

> 1.    I am employed by Life Insurance Company of North America as a Senior Operations Representative. In that capacity, I have access to the records of Life Insurance Company of North America ("LINA") relating to a claim for disability benefits filed by Tracy McQueen and other LINA claimants. I also have custody and access to information related to LINA's contract with Regain and referrals made under that contract. My personal knowledge and the records maintained by LINA in the regular course of business form the basis for this affidavit. I am competent to testify as to the facts stated herein and have personal knowledge of such facts.

2. I have reviewed Plaintiff's requests for information relating to the contract between LINA and Regain under which Regain provides employability assessment services, statistical and financial data regarding claims received by LINA and referral to Regain and the services Regain provided under its contract with LINA, including information related to specific claims referred to Regain.

3. LINA has invested significant time and money in developing procedures for referring claims to Regain and in negotiating its contractual relationship with Regain. Information regarding LINA's claims, referrals and contractual relationships with third party vendors such as Regain is not publicly available and would be valuable to LINA's competitors. The contract with Regain contains a confidentiality clause under which Regain agrees to keep [sic] maintain confidentiality of LINA's submitted information, which encompasses the information Plaintiff seeks. Disclosure of this information would give a competitor information that could not otherwise be obtained.

4. If a competitor were to obtain LINA's contract and referral history with Regain, it could use that information to approach Regain and negotiate a more advantageous contract for itself. For example, the competitor would be able to obtain an unfair financial advantage by obtaining the same services for a lower price than LINA pays. A competitor would also save the time and money involved in contract negotiations by using LINA's contract as an outline for proposed terms and conditions.

5. LINA's competitors would also save the time and money involved in developing referral procedures if they were able to use LINA's referral history as a guideline. This would result in a cost savings for competitors as well as a competitive advantage because a competitor could simply adapt LINA's practices instead of expending the time and money necessary to develop its own procedures.

6. If competitors were to have access to the number and disposition of claims handled by LINA each year, it not only would provide insight into LINA's business standing, but would also provide valuable information with respect to its claims handling.

7. A competitor could simply evaluate the claim information for itself, and discern patterns as to how those claims were handled. This insight into LINA's business practices is valuable to competitors because they can simply adapt LINA's practices for their own use instead of investing the time and money necessary to develop their own procedures.

Affidavit of Annie Hong, 08/22/08 - Exhibit 1 to LINA's Reply In Support of Motion for Protective Order [DE #29].

Based on the foregoing statements contained in the affidavit of Annie Hong, the Magistrate Judge concludes that LINA has established that its "claims and business materials" relative to Regain have independent economic value to LINA due to (1) their confidential nature, (2) the time, effort, and expense LINA has invested in creating these materials and procedures, (3) the

evolutionary process surrounding the development of these materials and procedures, and (4) the competitive nature of the claims' handling process in the insurance industry.

**b.      information would be of economic advantage to competitors if disclosed**

LINA asserts that the public disclosure of its "claims and business information" at issue would economically advantage its competitors, as this information would provide insight into its business standing and would provide valuable information with respect to its claims handling. To support this argument, LINA relies on numerical paragraphs 6, 7, and 8 of the Hong Affidavit.

Numerical paragraphs 6, 7, and 8 of the Hong Affidavit are set out in full above. Based on the statements contained therein, the Magistrate Judge concludes that LINA has established that the public disclosure of the "claims and business information" at issue would be of economical advantage LINA's competitors.

**c.      information is reasonably kept secret**

LINA contends that it has made efforts to ensure that the "claims and business information" at issue is not publicly available, as seen, in part, by the fact that its contract with Regain contains a clause that requires Regain to maintain the confidentiality of LINA's information. As support for this argument, LINA relies on numerical paragraph 3 of the Hong Affidavit.

Numerical paragraph 3 of the Hong Affidavit is set out in full above. Based on the statements contained therein, the Magistrate Judge concludes that LINA has established that it has taken measures to maintain the confidentiality of its "claims and business information" and to prevent the disclosure thereof to the public at large. Therefore, this information is reasonably kept secret.

Thus, under Kentucky's definition of a "trade secret," LINA has established that its "claims and business information" with respect to Regain are trade secret information because it (1) is of independent economic value due to its confidential nature, (2) would be of economic advantage to competitors if disclosed, and (3) is reasonably kept secret.

The next step in this analysis requires the court to determine whether good cause exists for entry of a protective order relative to LINA's "claims and business information" with respect to Regain.  Determining whether good cause exists "requires a balancing of the potential harm to litigants' interests against the public's right to obtain information concerning judicial proceedings." *Makar-Wellbon v. Sony Electronics, Inc.*, 187 F.R.D. 576, 577 (E.D.Wis.1999).  *See also Wiggins v. Burge*, 173 F.R.D. 226, 228 (N.D.Il1.1997) (court must balance "the harm to the party seeking the protective order and the importance of disclosure to the public.").  The moving party must show "that disclosure will work a clearly defined and serious injury." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3rd Cir. 1994).  *See, e.g., Anderson v. Cryovac, Inc*., 805 F.2d 1, 7 (1st Cir.1986) (good cause must be based on specific factual determinations or potential harm, not on conclusory statements).

LINA contends that good cause exists for entry of a protective order as the "claims and business information" at issue, asserting that in the absence of a protective order, this information would become available to competitors through discovery produced in this litigation. LINA reiterates that the insurance and claims handling industry is highly competitive and that its competitors could undermine its position in the marketplace with knowledge of this information, as competitors could duplicate and reconstruct LINA's claims handling procedures without investing their own time and effort in developing their own procedures.  LINA submits that public access to this information would result in a substantial cost savings and competitive economic advantage to its competitors, at its expense.

Based on the statements contained in the Affidavit of Annie Hong set out above, the Magistrate Judge concludes that LINA has established good cause for the requested protective order.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion for a protective order concerning its "claims and business information" with respect to Regain [DE #24] is **GRANTED**.

7

2. A separate <u>Protective Order</u> will entered on the same date herewith.

This 1st day of October, 2008.

Signed By:
*James B. Todd*
United States Magistrate Judge